

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-24-2004

# Malak v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1056

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Malak v. Atty Gen USA" (2004). *2004 Decisions.* Paper 333.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/333

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 03-1056 & 03-4206

SAMY MANSOUR MALAK,
Petitioner

v.

JOHN ASHCROFT,
ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

On Petitions for Review of Orders of the
Board of Immigration Appeals
(BIA No. A77-714-548)

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 13, 2004
Before: SCIRICA, *Chief Judge*, ALITO and AMBRO, *Circuit Judges*

(Filed          September 24, 2004          )

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

In this immigration case, petitioner Samy Malak appeals the orders of the Board of

Immigration Appeals denying his petitions for asylum and withholding of removal. We

will affirm.

**I.**

Samy Malak is a 34-year old citizen of Egypt and a Coptic Christian. His asylum claims center around alleged mistreatment by his neighbor Ahmed Abu Shanab, a member of the Muslim Brotherhood,[1] as well as an alleged lack of response by the local police.

In 1994, Malak and Shanab lived in adjacent apartments in a building owned by Malak's father. Malak cites to several confrontational incidents between his family and Shanab's family in support of his asylum application. Shanab allegedly told Malak's wife, Teriza, to not wear a cross on her necklace and to cover her head when entering or leaving the apartment building. Teriza was allegedly frightened by this encounter and refused to enter or leave the building unless accompanied by her husband. Malak also claims Shanab and his wife have attacked and beaten Teriza. In another incident, Malak alleges his company truck was vandalized by "a group of Shanab's men," members of the Muslim Brotherhood. At one point, Malak reported the presence of wanted criminals at Shanab's apartment, leading to the arrest of one of them and Shanab. Upon his release, Shanab allegedly attacked Malak with a sword, blaming him for the arrest and saying Malak "must pay for it." In April 1998, Malak relocated his family to a suburb of Cairo. But he claims two female followers of Shanab determined the family's whereabouts and attempted to kidnap Malak's son while he was attending school. Malak claims all of

---

[1]The IJ took judicial notice that the Muslim Brotherhood is a terrorist organization.

these incidents are at least partially motivated by Shanab's disdain for his religious affiliation.

In addition to alleged persecution from Shanab, Malak maintains the local police refused to help him, as they were either intimidated by Shanab, or they supported Shanab because of his affiliation with the Muslim Brotherhood. When Malak filed a report with the police concerning the attacks on Teriza, the police allegedly refused to take action against Shanab. Instead, the police officers allegedly told them to try to reconcile with Shanab and to forgive him. In another instance, Malak's family filed two complaints with the police to remove Shanab from his apartment because of his refusal to pay two years rent, but the police took no action. Malak claims this police inaction demonstrated their fear of and support of the Muslim Brotherhood, and their refusal to assist Coptic Christians.

Leaving his wife and son in Egypt, Malak arrived in the United States in March 1999 as a nonimmigrant visitor with authorization to remain in the country for sixth months. He filed for asylum in December 1999, and the INS placed him in removal proceedings in June 2000.

The immigration judge rejected Malak's asylum, withholding, and torture claims, finding his testimony and affidavit not credible. The IJ noted Malak testified to several crucial events during the proceedings but failed to list them in his asylum application and affidavit. These omitted events included the alleged attempted kidnapping of his son; the

3

allegation of police refusal to transmit reports relating to Shanab's attack on Malak's wife and son to their commanding officer who was Christian; and Shanab's alleged attack after Malak reported to the police that Shanab had criminals living with him. The IJ also found some discrepancies between Malak's testimony and his affidavit, with respect to who saw the men who vandalized the company car; who informed Malak about the fight between his wife and Shanab's family; and where Shanab threatened Malak after he filed charges against Shanab. Even assuming Malak's story was credible, the IJ ruled in the alternative that Malak did not demonstrate he was persecuted on statutorily protected grounds under 8 U.S.C. § 1101(a)(42)(A).

Malak appealed to the BIA, which affirmed the IJ's ruling without opinion. After his motion to reconsider was denied by the BIA, he appealed.

## II.

When the BIA defers to the decision of an IJ, we review the IJ's decision as the final agency decision. *Xie v. Ashcroft,* 359 F.3d 239, 242 (3d Cir. 2004). We review both the IJ's adverse credibility determination and the denial of asylum eligibility under the substantial evidence standard. *Id.* Under this standard, the IJ's ruling must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 243 (quoting *Gao v. Ashcroft,* 299 F.3d 266, 272 (3d Cir. 2002)). We have jurisdiction under 8 U.S.C. § 1252.

4

An adverse credibility determination must be based on evidence in the record, rather than on speculation. *Gao*, 299 F.3d at 272. Minor inconsistencies unrelated to the asylum applicant's fear for his safety are not a sufficient basis for an adverse credibility finding. *Id.* Instead, "[t]he discrepancies must involve the 'heart of the asylum claim.'" *Id.* (quoting *Ceballos-Castillo v. INS,* 904 F.2d 519, 520 (9th Cir. 1990)). After considering several omissions and discrepancies between Malak's testimony and his previously submitted affidavit, the IJ determined that Malak's story was not credible.

Malak claims on appeal he inadvertently omitted several events because he thought the initial affidavit need only provide a "summary" of his claims. In addition, he argues the inconsistencies are minor and are unrelated to the "heart of the asylum claim." Notwithstanding his assertion, the events to which Malak testified are integral to his claims of persecution. The IJ could reasonably have expected Malak to have listed all of the incidents of alleged police misconduct, as well as the fight between himself and Shanab and the attempted kidnapping of his son. The IJ's credibility findings are supported by substantial evidence from the record. We see no error.

To establish eligibility for asylum based on past persecution, Malak must show: "(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either 'unable or unwilling' to control." *Gao*, 299 F.3d at 272

5

(quoting *Navas v. INS,* 217 F.3d 646, 655 (9th Cir. 2000)).[2]  Furthermore, the alien must establish that the primary motivating factor behind the persecution is a statutorily-protected ground.  *Amanfi v. Ashcroft,* 328 F.3d 179 (3d Cir. 2003).  Because of our deferential standard of review of the IJ's findings of facts, we must affirm the denial of asylum unless the protected ground was the primary motivating factor of the persecution. *Id.*

Malak claims Shanab persecuted him on account of his Christian faith and that the local police were "unable or unwilling" to protect him because of his faith.  Based on the evidence he has presented, however, it is not at all clear that the alleged conduct of Shanab and his "followers" was motivated by religious bias or personal and financial conflicts.

Assuming the police did not follow up on Malak's reports, there is little indication that religious bias motivated the inaction.  Malak surmises that officers failed to pass along his report to the commanding officer because the officer was also a Coptic Christian, but this is speculation.

Although Malak belongs to a religious minority, there is scant evidence of widespread religious persecution toward Coptic Christians in Egypt.  Malak has presented reports of sporadic incidents of violence by radical Islamic groups and local police

---

[2]The five statutorily-protected grounds are race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. § 1101(a)(42)(A).

6

towards Christians. But the Egyptian government has stated that the Muslim Brotherhood's existence violates Egyptian law, and many members of the group have been arrested and detained by the government. The finding that there is no current credible evidence that Malak could reasonably fear persecution on account of his Christian faith if he returns to Egypt is well supported in the record.

## IV.

For the foregoing reasons, we will deny Malak's petitions for review and affirm the orders of the BIA.